**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ELEANOR COLMERS COWAN, *on behalf of herself and all others similarly situated,* *

*

*Plaintiff,*

*

v. Civil Action No. RDB-26-3073

*

WILLIAMS-SONOMA STORES, INC. d/b/a POTTERY BARN KIDS, *

*Defendant.* *

* * * * * * * * * * * * *

**MEMORANDUM ORDER**

In this putative class action, Plaintiff Eleanor Colmers Cowan ("Plaintiff" or "Ms. Cowan") alleges that Defendant Williams-Sonoma Stores, Inc., d/b/a Pottery Barn Kids ("Defendant" or "Pottery Barn Kids") sent her and putative class members materially misleading and deceptive marketing emails in violation of Maryland law. *See* (ECF No. 6).[1] This action is yet another among a group of nearly identical cases filed in this Court.[2]

Ms. Cowan initiated this action on June 17, 2026, by filing a one-Count Complaint ("Complaint") in the Circuit Court for Baltimore City, Maryland, alleging Defendant violated Maryland's Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW

[1] Plaintiff's Complaint appears on the docket at both ECF No. 1-3 and ECF No. 6. For clarity and consistency, the Court cites to the Complaint only at ECF No. 6.

[2] In addition to *Rossy v. Beis, LLC*, No. RDB-26-2119 (D. Md. Sep. 3, 2026), *LaTouche v. True Religion Apparel, Inc.*, Civ. No. RDB-26-00914, 2026 WL 2221402 (D. Md. Aug. 3, 2026), and *Crooks v. Coty DTC Holdings, LLC*, Civ. No. RDB-26-0078, 2026 WL 1265422 (D. Md. May 8, 2026), all filed before the undersigned, the following cases presenting essentially identical issues have appeared before other judges in this district: *Carter v. Vineyard Vines, LLC*, Civ. No. ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026); *Smith v. Lane Bryant Brands Opco LLC*, Civ. No. SAG-25-3766, 2026 WL 1745684 (D. Md. Jun. 17, 2026); *Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc.*, Civ. No. JRR-25-3753, 2026 WL 1214932 (D. Md. May 4, 2026).

§§ 14-*3001 et seq*. (Count I). (ECF No. 6 ¶¶ 65–72). On behalf of the putative class, Ms. Cowan seeks a declaration that Defendant violated MCEMA, MD. CODE ANN., COM. LAW § 14-3002; statutory damages of $500 per violation of MCEMA (or actual damages, if greater); reasonable attorneys' fees and costs; and pre-judgment and post-judgment interest on all sums awarded. (*Id.* ¶¶ 74–82). On August 5, 2026, Defendant removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b).[3] (ECF No. 1).

Presently pending before the Court is Ms. Cowan's Motion to Remand ("Motion to Remand") (ECF No. 8; ECF No. 8-1), in which she argues that her Complaint (ECF No. 6) does not allege a concrete injury sufficient to establish Article III standing.[4] (ECF No. 8-1 at 8). Defendant subsequently filed a Response in Opposition to Plaintiff's Motion to Remand ("Defendant's Opposition") (ECF No. 10),[5] and Plaintiff replied ("Plaintiff's Reply") (ECF No. 13). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Whether a plaintiff has established Article III standing is a threshold jurisdictional issue that this Court must resolve before reaching the merits of a dispute. *E.g.*, *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). For the reasons set forth below, Plaintiff lacks Article

[3] This Court has diversity jurisdiction over this matter under CAFA, 28 U.S.C. §§ 1332(d), which authorizes diversity jurisdiction in matters in which there are at least 100 members in the putative class, the amount in controversy exceeds $5 million, and at least one plaintiff is diverse from at least one defendant. *See* (ECF No. 1 at 2 (asserting CAFA jurisdiction)).

[4] As alternative arguments for remand, Plaintiff also raises that Defendant untimely removed this action, and that the present record does not establish CAFA's minimum $5 million amount in controversy requirement by a preponderance of the evidence. (ECF No. 8-1 at 6, 12). Because Plaintiff lacks Article III standing, this Court does not address the merits of those arguments.

[5] Defendant suggests that, if this Court were to find that Ms. Cowan failed to allege a concrete injury for Article III standing purposes, that finding would demonstrate that Ms. Cowan's claim is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C.A. §§ 7701 *et seq*. (ECF No. 10 at 8–9). As explained above, because this Court finds that Ms. Cowan lacks Article III standing, it does not address Defendant's argument concerning preemption.

III standing such that this Court lacks subject matter jurisdiction. Therefore, Plaintiff's Motion to Remand (ECF No. 8-1) is GRANTED. This case is REMANDED to the Circuit Court for Baltimore City, Maryland.

## BACKGROUND

Plaintiff's claims relate to Pottery Barn Kids' allegedly deceptive marketing practices. Plaintiff alleges that Pottery Barn Kids sends marketing emails with "false or misleading" subject lines "represent[ing] that a sale is ending, expiring, available for only a specified period, in its final hours, or the recipient's last chance to act" but then "extends or continues the same or [a] materially equivalent sale shortly thereafter." (ECF No. 6 ¶ 3). Specifically, she alleges that:

> [Pottery Barn Kids'] false-urgency subject lines have the capacity, tendency, and effect of deceiving recipients. The subject lines communicate objective timing information: that the sale is ending today, ending tonight, in its final hours, or available for only a short period. When [Pottery Barn Kids] then extends or continues the same or materially equivalent sale, the earlier deadline subject line is false or misleading.

(*Id.* ¶ 39). According to Plaintiff, these emails "frequently use urgency and scarcity language" that is "designed to cause recipients to open [Pottery Barn Kids'] emails, visit [Pottery Barn Kids'] website, and consider purchasing [Pottery Barn Kids'] products." (*Id.* ¶¶ 25–26).

Plaintiff alleges that the repetitive, deceptive marketing emails described above violate the Maryland Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW §§ 14-3001 *et seq.* (Count I). *See generally* (ECF No. 6 ¶¶ 1–72). Under MCEMA, a person may not send, conspire to send, or assist another in sending commercial electronic mail[6] into or

---

[6] "[C]ommercial electronic mail" is "electronic mail that advertises real property, goods, or services for sale or lease." MD. CODE ANN., COM. LAW § 14-3001(b)(1).

out of Maryland that contains "false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient." MD. CODE ANN., COM. LAW § 14-3002(b). MCEMA authorizes statutory damages of $500 per violation or the email recipient's actual damages, whichever is greater. *See id.* § 14-3003. Notably, although Plaintiff alleges violations of MCEMA, she "never placed an order, created an online account, used a Williams-Sonoma or Pottery Barn app, applied for or used a Williams-Sonoma credit card, or otherwise clicked to accept online terms." (ECF No. 6 ¶ 15). However, she did "provid[e] her name and email address" to receive marketing emails, and she "would have liked to receive truthful information from [Pottery Barn Kids] regarding [its] promotions." (*Id.* ¶¶ 15, 53).

On June 17, 2026, Plaintiff filed this putative class action in the Circuit Court for Baltimore City, Maryland. (ECF No. 6). In her one-Count Complaint, Plaintiff seeks a declaration that Defendant violated § 14-3002 of MCEMA, statutory damages of $500 per violation of MCEMA (or actual damages, if greater), reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest on all sums awarded. (*Id.* ¶¶ 74–82). On August 5, 2026, Defendants removed this action to this Court, asserting jurisdiction based on minimal diversity under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b).[7] (ECF No. 1). Plaintiff then filed a Motion to Remand on August 10, 2026, (ECF No. 8), asserting untimely removal, that her Complaint did not establish a concrete injury sufficient to confer Article III standing, and that the record did not satisfy CAFA's $5 million

[7] As noted above, CAFA authorizes diversity jurisdiction in putative class actions in which (1) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, (2) any member of a class of plaintiffs is a citizen of a State different from any defendant (known as "minimal diversity"), and (3) the number of all members of all proposed plaintiff classes aggregates to one hundred or more. 28 U.S.C. § 1332(d).

amount in controversy requirement.[8] (ECF No. 8-1 at 6–16). Defendant responded in Opposition on August 24, 2026. (ECF No. 10). On August 25, 2026, Plaintiff filed a Reply in which she argued that this Court's decision in *LaTouche v. True Religion Apparel, Inc.*, Civ. No. RDB-26-00914, 2026 WL 2221402 (D. Md. Aug. 3, 2026) forecloses Defendant's argument that she suffered a concrete injury from the receipt of Defendant's allegedly deceptive marketing emails alone. (ECF No. 13 at 2–3). This matter is now ripe for review.

**STANDARD OF REVIEW**

A defendant may remove any state civil case to federal court if the plaintiff could have originally brought the case in federal court. 28 U.S.C. § 1441(a); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 7–8 (1983). Thus, for removal to be proper, the federal court must have original jurisdiction over the case despite it being filed in state court. If "a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Franchise Tax Bd.*, 463 U.S. at 8 (citing 28 U.S.C. § 1447(c)). A defendant who removes a case bears the burden of establishing both that the federal court has jurisdiction and that the removal is procedurally correct. *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016) (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)); *see also* 28 U.S.C. § 1446 (removal procedures).

[8] As noted above, because this Court concludes that Plaintiff lacks Article III standing, it will not address Plaintiff's alternative arguments concerning the timeliness of removal and CAFA jurisdiction.

## ANALYSIS

This case presents a threshold question of Article III standing, namely, whether Ms. Cowan's Complaint (ECF No. 6) establishes that she has suffered the requisite concrete injury to continue litigation of this action in federal court. As the U.S. Court of Appeals for the Fourth Circuit has recently reiterated, "[w]here standing is in question, the federal court must decide the issue before reaching the merits of any claim presented" because Article III standing is a jurisdictional prerequisite to adjudication. *Pub. Int. Legal Found., Inc. v. Wooten*, 164 F.4th 362, 365 (4th Cir. 2026) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). As the Supreme Court has repeatedly emphasized, "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024); *see* U.S. Const. art. III, § 2, cl. 1. "The requirement that a [p]laintiff possess 'standing to sue' emanates from that constitutional provision." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018). As particularly relevant to Ms. Cowan's claim, the Fourth Circuit held that "plaintiffs cannot establish a cognizable injury simply by pleading a statutory violation." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022); *see also O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 243 (4th Cir. 2023) ("The intangible harm of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm (or a materially increased risk of another harm) associated with the violation.").

"A proper case or controversy exists only when [the] plaintiff 'establish[es] that [she] ha[s] standing to sue.'" *Murthy*, 603 U.S. at 57 (alterations in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Such standing ensures that a plaintiff has "a 'personal stake' in the case." *TransUnion LLC v. Ramirez*,

594 U.S. 413, 423 (2021) (quoting *Raines*, 521 U.S. at 819). Article III standing exists where (1) the plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "the injury was likely caused by the defendant;" and (3) "the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan*, 504 U.S. at 560–61). The burden to establish standing lies with the party invoking federal jurisdiction—here, Pottery Barn Kids. *Lujan*, 504 U.S. at 561.

At the pleading stage, "the court determines whether the allegations in the Complaint, taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*." *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 598 (D. Md. 2022) (quoting *Allah-Mensah v. Law Off. of Patrick M. Connelly, P.C.*, Civ. No. PX-16-1053, 2016 WL 6803775, at *2 (D. Md. Nov. 17, 2016)). If a federal court determines that it lacks subject matter jurisdiction over a case that has been removed from state court, the case must be remanded to state court. 28 U.S.C. § 1447(c); *Wells v. Johnson*, 150 F.4th 289, 308 (4th Cir. 2025). Thus, the Court must remand this case if Plaintiff lacks standing.

In this case, Article III standing hinges on whether Plaintiff alleged a sufficiently concrete injury in fact. "A plaintiff can show an 'injury in fact' when [she] suffers 'an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent.'" *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 268 F.3d 255, 263 (4th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)); *accord Lujan*, 504 U.S. at 560–61. Crucially, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "[A]n injury in law is not an injury in fact," *TransUnion*, 594 U.S. at 427, and a

statutory injury does not inherently confer an injury in fact. *See, e.g.*, *Garey*, 35 F.4th at 921. Instead, a plaintiff alleging a statutory violation has an Article III injury where she can show that she has been "*concretely harmed* by a defendant's statutory violation[.]" *TransUnion*, 594 U.S. at 427.

"An injury is concrete if it is 'de facto'—that is, if it 'actually exist[s].'" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 340). "Concrete injuries are not, however, limited to those injuries that result in tangible harm." *Id.* (citing *Spokeo*, 578 U.S. at 340–41). A plaintiff alleging intangible harm "under a statutory cause of action can establish a cognizable injury by 'identif[ying] a close historical or common-law analogue for their asserted injury' for which courts have 'traditionally' provided a remedy." *Garey*, 35 F.4th at 921 (alteration in original) (quoting *TransUnion*, 594 U.S. at 424). Here, Ms. Cowan alleges her claims pursuant to the statutory cause of action provided in the Maryland Commercial Electronic Mail Act ("MCEMA"), MD. CODE ANN., COM. LAW §§ 14-3001 *et seq.* As explained below, her alleged intangible harms are not sufficiently concrete to constitute an injury-in-fact cognizable under Article III. As such, this Court lacks subject matter jurisdiction, and this case must be remanded.

Plaintiff alleges that Defendant sent her and other members of the putative class promotional emails repeatedly throughout 2025 with false or misleading subject lines that "had the capacity, tendency, or effect of deceiving recipients" by creating a sense of "false-urgency[.]" (ECF No. 6 ¶¶ 3, 7, 11). Specifically, she alleges that the emails' subject lines included phrases such as "FINAL HOURS," "LAST CHANCE," "TODAY ONLY," "HOURS LEFT," "TWO DAYS ONLY," and that a sale would "END[] TONIGHT." (*Id.*

¶¶ 8–10, 26, 29, 32–37). However, according to Plaintiff, "the referenced promotions did not end as advertised[,]" and instead Pottery Barn Kids "extended or continued the same or materially equivalent promotions shortly after telling recipients that the promotions were ending, in their final hours, or the recipient's last chance to save." (*Id.* ¶ 31); *see also* (*id.* ¶¶ 3, 11, 27). Notably, while Plaintiff "would have liked to receive truthful information" from Pottery Barn Kids about its promotions, she does *not* allege that (1) she did not want the emails; (2) she relied to her detriment on any of the allegedly false subject lines such that she placed or almost placed an online order she would not have otherwise placed; or (3) she spent any significant amount of time reviewing or deleting the emails. *See* (*Id.* ¶ 53). Rather, she alleges that these emails violate MCEMA because their "false-urgency subject lines have the capacity, tendency, and effect of deceiving recipients" to "drive recipient engagement." (*Id.* ¶¶ 39, 53).

The question of whether violations of MCEMA create a cognizable injury for purposes of Article III standing has arisen recently in this Court. *See Rossy v. Beis, LLC*, No. RDB-26-2119 (D. Md. Sep. 3, 2026), ECF No. 28; *LaTouche v. True Religion Apparel, Inc.*, Civ. No. RDB-26-00914, 2026 WL 2221402 (D. Md. Aug. 3, 2026); *Crooks v. Coty DTC Holdings, LLC*, Civ. No. RDB-26-0078, 2026 WL 1265422 (D. Md. May 8, 2026); *Carter v. Vineyard Vines, LLC*, Civ. No. ELH-25-3178, 2026 WL 1429258 (D. Md. May 21, 2026); *Smith v. Lane Bryant Brands Opco LLC*, Civ. No. SAG-25-3766, 2026 WL 1745684 (D. Md. Jun. 17, 2026); *Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc.*, Civ. No. JRR-25-3753, 2026 WL 1214932 (D. Md. May 4, 2026). Most relevantly, only two months ago in *LaTouche*, this Court considered facts nearly identical to those at issue in this case. *Compare LaTouche*, 2026 WL 2221402, at *2, *and Carter*, 2026 WL 1429258, at *2, *28, *with* (ECF No. 6 ¶¶ 7–10, 29–39, 30–39, 48-49). Tellingly, this Court

observed that where "a plaintiff in briefing or in a complaint disclaims any injury beyond mere receipt of emails that allegedly violate MCEMA, this Court has repeatedly determined that the plaintiff lacks Article III standing." *LaTouche*, 2026 WL 2221402, at *10 (citations omitted).

Similarly, in *Carter*, Judge Hollander of this Court likewise found that the receipt of emails that "create a false sense of urgency and stimulate consumers to make purchases" does not constitute an injury in fact for purposes of Article III standing. 2026 WL 1429258, at *28, *30. Thus, because Plaintiff did not allege an injury beyond receiving marketing emails with the "capacity, tendency, and effect of deceiving recipients" in violation of MCEMA, this Court's prior holdings mandate the conclusion that she lacks Article III standing. *See Rossy*, No. RDB-26-2119, ECF No. 28, at 11; *LaTouche*, 2026 WL 2221402, at *9, *10; *Carter*, 2026 WL 1429258, at *1, *12–14, *17, *23–28; *Crooks*, 2026 WL 1265422, at *5–6; *Mulanena*, 2026 WL 1214932, at *6–7; *Asabre v. Retail Servs. & Sys., Inc.*, Civ. No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sep. 19, 2022); (ECF No. 13 at 2 (disclaiming additional injury)).

Nonetheless, Defendant contends that Plaintiff's "broader factual allegations . . . sound in nuisance and wasted time," which some courts "have held satisfy Article III's concreteness requirement[.]"[9] (ECF No. 10 at 5). Alternatively, Defendant argues that the Fourth Circuit's

[9] Defendant asserts that, "in analogous consumer-protection contexts[,]" other courts have found that flooding email inboxes with false notifications "is not an abstract statutory violation[,]" but is "a concrete injury . . . sufficient for Article III standing." (ECF No. 10 at 5). However, the cases Defendant cites in support are unconvincing in light of the number of recent decisions by *this Court* rejecting Defendant's identical argument with respect to MCEMA. *See, e.g.*, *Hoffman v. One Techs.*, No. C16-1006RSL, 2017 WL 176222 (W.D. Wash. Jan. 17, 2017) (denying defendant's partial motion to dismiss, finding allegations of "usurpation of electronic storage space and invasions of [plaintiff's] privacy" constituted concrete and particularized harms sufficient to confer Article III standing). Notably, the harms in *Hoffman* are not alleged here—Ms. Cowan's asserted injury is that the false or misleading subject lines "had the capacity, tendency, or effect of deceiving recipients[.]" (ECF No. 6 at 14). Ms. Cowan's alleged injury also differs from that in *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, 329 F. Supp. 3d 146, 153 (D. Md. 2018), where plaintiff's receipt of an unsolicited fax in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, was sufficiently concrete to satisfy Article III's injury-in-fact requirement. There, Judge Hazel's conclusion was supported by numerous prior

holding in *Beyond Sys. v. Kraft Foods, Inc.*, 777 F.3d 712, 715-16 (4th Cir. 2015) establishes that Plaintiff's alleged MCEMA violations satisfy the Article III concrete injury requirement. (ECF No. 10 at 7). The Court will address each argument in turn.

First, even if Defendant is only required to demonstrate "a close relationship to a single traditionally recognized harm," (ECF No. 10 at 7), Article III standing requires the *plaintiff's intangible injury*—not the *defendant's conduct*—to closely resemble a historical common law analogue. *Smith*, 2026 WL 1745684, at *2. However, Plaintiff has not alleged an intangible injury akin to the historical common law analogue of nuisance. As Judge Hollander of this Court recently explained regarding very similar allegations, a "close relationship" to a private nuisance claim in Maryland exists only where the plaintiff alleges a substantial and unreasonable interference with the use and enjoyment of her property. *E.g.*, *Carter*, 2026 WL 1429258, at *25 (citations omitted).

Here, the Complaint (ECF No. 6) only alleges injury from the "receipt of the [allegedly deceptive marketing] emails and uncertainty about which deadlines were truthful." (ECF No. 13 at 3). Further, Plaintiff "would have liked to receive truthful information" about Pottery Barn Kids' promotions. (ECF No. 6 ¶ 53). However, Plaintiff does not allege that the emails

decisions under the TCPA construing Congress's intent to provide a right of action on the basis of a statutory violation of the TCPA alone. *Id.* at 150–53. No similar body of case law exists with respect to MCEMA. Finally, Defendant cites *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) for the proposition that "'wasted time' is a concrete injury under Article III." (ECF No. 10 at 6). However, in that case, the Court was faced with determining whether the time spent remedying a major security breach leading to the disclosure of over 140 million social security numbers, *inter alia*, constituted a concrete injury in fact. *In re Equifax*, 999 F.3d at 1262. The Court noted that under these circumstances, where a data breach had occurred but there was not yet tangible proof of identity theft, a plaintiff could satisfy the concreteness element by demonstrating a "material risk of harm." *Id.* (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 927 (11th Cir. 2020)). The Court continued that, where a plaintiff can establish a material risk of harm, "the time, money, and effort spent mitigating the risk are also concrete injuries"; however, in the absence of a material risk of harm, the Court clarified that wasted time is not a standalone concrete injury. *Id.* There is no similar "material risk of harm" here, and in any case, Ms. Cowan has not necessarily pled an injury of wasted time.

were unwanted or unsolicited. *See generally* (ECF No. 6). Given this Court's recent holding that "[a]bsent further harm, 'alleged inundation with voluminous deceptive marketing emails itself' is not a cognizable injury-in-fact[,]" Plaintiff here "hasn't adequately pled that [s]he was injured by the alleged statutory violation at all—much less in a way that closely relates to a traditional analog for a federal lawsuit." *LaTouche*, 2026 WL 2221402, at *12 (quoting *O'Leary*, 60 F.4th at 246). Defendant cannot overcome this by inserting its own allegations regarding Plaintiff's injuries.

Finally, Defendant argues that the Fourth Circuit's holding in *Beyond Systems*—that "MCEMA violations constitute concrete injuries sufficient for Article III standing"—establishes Plaintiff suffered a concrete injury sufficient to confer Article III standing in this case. (ECF No. 10 at 7) (citing *Beyond Sys.*, 777 F.3d at 715–16). However, Judge Grimm of this Court has aptly observed that "*Beyond Systems* was decided prior to both *Spokeo* and *TransUnion*, which 'rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Asabre v. Retail Servs. & Sys., Inc.*, No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sept. 19, 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)). Additionally, in a strikingly similar case to the present, Judge Rubin of this Court relied on this distinction when concluding that the plaintiff in that case did not suffer a concrete injury by virtue of the receipt of emails that had the mere "capacity to deceive." *See Mulanena*, 2026 WL 1214932, at *6–7. The same logic applies here.

In sum, Ms. Cowan's Complaint alleges statutory harm alone without any concrete harm. Pottery Barn Kids has not met its burden to show that Ms. Cowan has suffered a

concrete injury in fact as required for Article III standing. Thus, this Court lacks subject matter jurisdiction, and Plaintiff's Motion to Remand (ECF No. 8-1) is GRANTED. This case must be REMANDED to the Circuit Court for Baltimore City, Maryland. *See Wells*, 150 F.4th at 308; 28 U.S.C. § 1447(c).

**CONCLUSION**

For the reasons stated above, it is this 1st day of October 2026, hereby ORDERED that:

1. Plaintiff's Motion to Remand (ECF No. 8-1) is GRANTED;
2. This case shall be REMANDED to the Circuit Court for Baltimore City, Maryland;
3. This case shall be CLOSED; and,
4. The Clerk of Court shall transmit copies of this Memorandum Order to counsel of record.

/s/
Richard D. Bennett
United States Senior District Judge